IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRIS SNYDER, ADRIENNE GALT and NANCY MURPHY**, for themselves and all others similarly situated,<br>　　　　　Plaintiffs,<br>　　v.<br><br>**EAGLEVILLE HOSPITAL**,<br>　　　　　Defendant. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COLLECTIVE / CLASS ACTION COMPLAINT

Chris Snyder, Adrienne Galt, and Nancy Murphy ("Plaintiffs"), by and through their undersigned counsel, hereby make the following allegations against Eagleville Hospital ("Defendant") concerning their acts and status upon actual knowledge, and concerning all other matters upon information, belief, and the investigation of their counsel:

### NATURE OF THE ACTION

1. Plaintiffs contend that Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), by knowingly suffering or permitting certain employees to work during their unpaid meal breaks without properly tracking this work or paying any wages for it. Plaintiffs contend that Defendant also violated the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq.* ("MWA"), by knowingly suffering or permitting certain employees to work during their unpaid meal breaks without accurately tracking this work or paying all overtime premium wages owed for it.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or

State court of competent jurisdiction." This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331 because Plaintiffs' claims arise under the FLSA.

3.     This Court has supplemental jurisdiction over Plaintiffs' MWA claim pursuant to 28 U.S.C. § 1367, because these claims arise from the same occurrences and transactions as Plaintiffs' FLSA claim (i.e., Defendant's failure to pay wages owed at the proper rate for all hours worked) and are so related to this claim as to form part of the same case or controversy.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiffs reside in this District, Plaintiffs worked for Defendant in this District, Plaintiffs suffered the losses at issue in this District, Defendant has significant business contacts in this District, Defendant is alleged to have engaged in the wrongful conduct at issue in this District, and actions and omissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

5.     Plaintiff Chris Snyder is an adult citizen of the Commonwealth of Pennsylvania who resides in Montgomery County. Mr. Snyder worked as a full-time Mental Health Tech for Defendant from May 2013 to August 2015, logging 40 or more hours each workweek. As a Mental Health Tech at Eagleville Hospital, Mr. Snyder's primary work responsibilities included admitting patients, taking vital signs, providing patient care, completing paperwork, responding to emergency situations, and interacting with other hospital employees. Mr. Snyder has submitted an opt-in consent form to join this lawsuit.

6.     Plaintiff Adrienne Galt is an adult citizen of the Commonwealth of Pennsylvania who resides in Montgomery County. Ms. Galt worked as a full-time Registered Nurse for Defendant from March 2008 to August 2015, logging 40 or more hours each workweek. As a Registered Nurse at Eagleville Hospital, Ms. Galt's primary work responsibilities included:

admitting patients, providing patient care, monitoring patients, administering medicine, monitoring blood-work and test results, responding to emergency situations, and interacting with other hospital employees and visitors. Ms. Galt has submitted an opt-in consent form to join this lawsuit.

7. Plaintiff Nancy Murphy is an adult citizen of the Commonwealth of Pennsylvania who resides in Delaware County. Ms. Murphy worked as a Registered Nurse for Defendant on a *per diem* basis from May 2014 to June 2015. Although her schedule and work hours were variable, Ms. Murphy worked more than 40 hours per week in several workweeks. As a Registered Nurse at Eagleville Hospital, Ms. Murphy's primary work responsibilities included: admitting patients, providing patient care, monitoring patients, administering medicine, monitoring blood-work and test results, responding to emergency situations, and interacting with other hospital employees and visitors. Ms. Murphy has submitted an opt-in consent form to join this lawsuit.

8. Defendant is a Pennsylvania non-profit (non-stock) corporation with a principal place of business in Montgomery County, PA. Defendant operates a certified 308-bed acute care hospital that provides a wide range of services relating to the treatment of substance use disorders. *See* http://www.eaglevillehospital.org/ (accessed Oct. 23, 2015). During the relevant period, Defendant was an "employer" of Plaintiffs and the Class members as defined by the FLSA and MWA, and was actively engaged in the activities described herein.

## BACKGROUND FACTS

9. During the relevant period, Defendant maintained common written policies relating to how hourly employees worked, took meal breaks, tracked their work time, and were paid. *See* Employee Handbook (Exhibit A).

10. These policies promised hourly employees one unpaid meal break of at least 30 minutes for each shift of five hours or more. *See* Exhibit A, pp. 14, 34.

11. In keeping with its policies, Defendant automatically deducted 30 minutes from each shift of five hours or more its hourly employees worked, representing their unpaid meal break. Plaintiffs are familiar with this automatic deduction, because they had to work 8½ hours each shift to earn eight hours' pay, and also because they discussed the automatic meal break deduction with their managers and co-workers as part of Defendant's day-to-day operations.

12. During the relevant period, Defendant maintained a common requirement that hourly employees had to prioritize their work responsibilities – particularly any responsibilities relating to patient care – over their ability to take an uninterrupted meal break. Plaintiffs are familiar with this requirement from Defendant's Employee Handbook, *see* Exhibit A at pp. 3, 8, 30-31, 33, and because their supervisors, managers and co-workers routinely emphasized the importance of providing high-quality patient care as part of Defendant's day-to-day operations.

13. During the relevant period, Defendant maintained a common procedure that ostensibly allowed hourly employees to request wages for a <u>missed</u> meal break by alerting a supervisor or manager that they had missed their meal break and asking to be paid. Plaintiffs are familiar with this procedure, because they received training or instruction about how to seek pay for a missed meal break as part of Defendant's day-to-day operations.

14. However, during the relevant period, Defendant engaged in a common practice of discouraging hourly employees from seeking compensation for their meal break work by training its managers to deflect and discourage requests for meal break pay, and encourage a culture in which hourly employees were encouraged to focus on their doing their work, not how they were paid. This practice included telling hourly employees that they were not allowed to request meal

break pay, and suggesting that too many requests for meal break pay could result in poor performance reviews and put their jobs at risk. Plaintiffs' managers also discouraged Plaintiffs from pursuing meal break pay by aggressively questioning them about their work, questioning their dedication, and subjecting them to additional unwanted scrutiny that made them fear for their jobs.

15. Moreover, during the relevant period, Defendant uniformly failed to provide hourly employees with any training or instruction about requesting pay for an <u>interrupted</u> meal break. Since hourly employees did not know it was possible to request pay for an interrupted meal break, they rarely (if ever) did so.

## **FACTS RELATING TO THE NAMED PLAINTIFFS**

16. During the relevant period, because of hospital-wide short-staffing problems and the constant unpredictable demands of their work, Plaintiffs rarely received an uninterrupted 30-minute meal break.

17. During the relevant period, Mr. Snyder has typically performed about 20 minutes of work (including: admitting patients, taking vital signs, providing patient care, completing paperwork, responding to emergency situations, and interacting with other hospital employees) during about 80% of his unpaid meal breaks.

18. During the relevant period, Ms. Galt has performed about 20 minutes of work (including: admitting patients, providing patient care, monitoring patients, administering medicine, monitoring blood-work and test results, responding to emergency situations, and interacting with other hospital employees and visitors) during about 95% of her unpaid meal breaks.

19. During the relevant period, Ms. Murphy has performed about 30 minutes of work (including: admitting patients, providing patient care, monitoring patients, administering medicine, monitoring blood-work and test results, responding to emergency situations, and interacting with other hospital employees and visitors) during about 90% of her unpaid meal breaks.

20. During the relevant period, Mr. Snyder communicated about missed and shortened meal breaks, and the underlying short-staffing and work-load issues that caused them, with nursing supervisors Eileen Taylor and Chris Smith.

21. During the relevant period, Ms. Galt communicated about missed and shortened meal breaks, and the underlying short-staffing and work-load issues that caused them, with her managers James McCall and Harriett Hovington, and Director of Nursing Sandy Kasky.

22. During the relevant period, Ms. Murphy communicated about missed and shortened meal breaks, and the underlying short-staffing and work-load issues that caused them, with Director of Nursing Sandy Kasky.

23. None of Plaintiffs' communications resulted in any consistent or reliable effort to ensure they were properly covered or relieved to take an uninterrupted meal break; that Plaintiffs' meal break work was properly tracked; or that Plaintiffs were paid all wages owed for their meal break work.

24. During the relevant period, Mr. Snyder was repeatedly discouraged from requesting pay for missed meal breaks by nursing supervisors Eileen Taylor and Chris Smith. Defendant did not provide Mr. Snyder with any training or instruction about how to request pay for an interrupted meal break, so he did not know this was possible and did not do it.

25. During the relevant period, Ms. Galt was repeatedly discouraged from requesting pay for missed meal breaks by managers James McCall and Harriett Hovington, and Director of Nursing Sandy Kasky. Defendant did not provide Ms. Galt with any training or instruction about how to request pay for an interrupted meal break, so she did not know this was possible and did not do it.

26. During the relevant period, Ms. Murphy was repeatedly discouraged from requesting pay for missed meal breaks by Director of Nursing Sandy Kasky. Defendant did not provide Ms. Murphy with any training or instruction about how to request pay for an interrupted meal break, so she did not know this was possible and did not do it.

27. Plaintiffs' interactions with their managers and supervisors, their observations of their managers and supervisors, their interactions with other hourly employees, their observations of other hourly employees, and Defendant's efforts to discipline or counsel hourly employees who requested wages for missed meal breaks all amply demonstrate Defendant's common practice of discouraging hourly employees from requesting meal break pay.

## FLSA COLLECTIVE ACTION ALLEGATIONS

28. Plaintiffs bring their FLSA claim on a collective basis pursuant to 29 U.S.C. § 216(b) for all employees at Eagleville Hospital during the maximum limitations period who had hands-on patient care responsibilities and worked during one or more unpaid meal breaks without receiving all overtime wages owed for this work. [1] Plaintiffs reserve the right to amend this collective group definition as necessary.

---

[1] At present, Plaintiffs believe the putative collective group will include employees from the following positions: Certified Nursing Assistants, Emergency Medical Technicians, Licensed Practical Nurses, Mental Health Technicians, Nursing Assistants, and Registered Nurses.

7

29. Plaintiffs are members of the collective group they seek to represent, because they worked at Eagleville Hospital during the maximum limitations period, had jobs that involved hands-on patient care responsibilities, and worked during one or more unpaid meal breaks without receiving all overtime wages owed for this work.

30. Although Plaintiffs and the Class members had different job titles, different supervisors, and worked in different departments at Eagleville Hospital, this action may be properly maintained as a collective action on behalf of the collective group because, among other things:

   a. Plaintiffs and the collective group members all worked for Defendant;

   b. Plaintiffs and the collective group members were required to comply with the common policies and practices at issue in this case;

   c. Plaintiffs and the collective group members received common training from Defendant relating to the matters at issue in this case, including a common lack of training about requesting pay for interrupted meal breaks;

   d. Plaintiffs and the collective group members were subjected to the common practice of being discouraged from seeking pay for missed meal breaks;

   e. Defendant maintained common timekeeping systems and policies with respect to Plaintiffs and the collective group members, and was responsible for maintaining accurate records tracking the hours worked by, and the wages paid to, Plaintiffs and the collective group members, *see* 29 C.F.R. §516.2(a)(7);

   f. Defendant maintained common payroll systems and policies with respect to Plaintiffs and the collective group members that did not cause or require wages to be properly paid for all missed or shortened meal breaks; and

8

  g. Defendant maintained a common "Disciplinary Procedure" policy under which Plaintiffs and the collective group members were subject to discipline for violations of the policies and practices at issue in this case.

31. Plaintiffs and the collective group members do not meet any test for exemption under the FLSA.

32. Plaintiffs estimate that the collective group, including both current and ex-employees over the relevant period, will include several hundred people.  The precise number of Class members should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from the collective group members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

33. Plaintiffs bring their MWA claim as a class action pursuant to Fed. R. Civ. P. 23 for all Pennsylvania residents employed at Eagleville Hospital during the maximum limitations period who had hands-on patient care responsibilities and worked during one or more unpaid meal breaks without receiving all wages owed for this work.[2]  Plaintiffs reserve the right to amend this Class definition as necessary.

34. Plaintiffs are members of the Class they seek to represent, because they are Pennsylvania residents who worked at Eagleville Hospital during the maximum limitations period, had jobs that involved hands-on patient care responsibilities, and worked during one or more unpaid meal breaks without receiving all wages owed for this work.

---

[2] At present, Plaintiffs believe the putative Class will include employees from the following positions: Certified Nursing Assistants, Emergency Medical Technicians, Licensed Practical Nurses, Mental Health Technicians, Nursing Assistants, and Registered Nurses.

35.     The members of the putative Class are so numerous that their joinder would be impracticable.  Over the relevant period, Defendant employed more than 200 people in jobs that involved hands-on patient care responsibilities.

36.     There are material questions of law or fact common to the members of the putative Class because, as discussed throughout this filing, Defendant engaged in a common course of conduct that violated their legal rights.  Any individual questions that Plaintiffs' claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

      a.     whether Plaintiffs and the Class members were subject to a common, written "Work Hours" policy that defines the work day, work week, and pay period the same way for all hourly employees;

      b.     whether Plaintiffs and the Class members were subject to a common, written "Work Hours" policy that promises all hourly employees one unpaid 30-minute lunch break per shift;

      c.     whether Defendant commonly represents to its hourly employees that they will be paid at the appropriate rate for all hours they work;

      d.     whether Defendant maintains a common, written "Overtime" policy that promises to pay all hourly employees at a time-and-a-half overtime premium rate for all hours they work over 8 in a day or over 80 in a two-week pay period;

      e.     whether Defendant required advance approval from a supervisor, department manager and administrative vice-president for all overtime work;

      f.     whether Defendant's "Disciplinary Procedure" policy threatens corrective discipline up to and including termination for failure to comply with the provisions of the policy;

      g.     whether Plaintiffs and the putative Class members were required to prioritize their work-related responsibilities over their entitlement to an uninterrupted lunch break;

      h.    whether Defendant discouraged Plaintiffs and the members of the putative Class from accurately tracking their meal break work time;

      i.    whether Defendant denied Plaintiffs and the putative Class members overtime premium wages owed under the MWA;

      j.    whether Defendant should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

37. Plaintiffs' claims are typical of the claims belonging to the members of the putative Class. Plaintiffs are similarly-situated to the putative Class members because they were all subject to the same common policies identified above, and were denied legally-required wages as a result of Defendant's common course of wrongful conduct.

38. Plaintiffs will fairly and adequately assert and protect the interests of the absent Class members under the criteria set out in Pa. R. Civ. P. 1709 because: there is no apparent conflict of interest between Plaintiffs and the absent Class members; Plaintiffs' Counsel have successfully prosecuted many complex Class actions, including wage and hour class actions under the MWA, and will adequately prosecute these claims; and Plaintiffs have adequate financial resources to assure that the interests of the Class members will not be harmed because their counsel has agreed to advance the costs and expenses of litigation on the Class' behalf contingent upon the outcome of this litigation consistent with Pa. R. Prof. Conduct 1.8(e)(1).

39. Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy under the criteria in Pa. R. Civ. P. 1708 because issues common to the members of the putative Class (including whether Defendant's timekeeping and compensation policies and practices comported with the MWA) predominate over any questions affecting only individual members; no difficulties are likely to

be encountered in the management of this litigation as a class action; and the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims

40. Given the material similarity of the claims belonging to the members of the putative Class, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of scores of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a Class action will permit the efficient supervision of these claims, give rise to significant economies of scale for the Court and the Parties and result in a binding, uniform adjudication on all issues.

41. Allowing Plaintiffs' claims to proceed in a class action setting is also appropriate because the MWA expressly permits private class action lawsuits to recover unpaid regular and overtime wages.

## COUNT I
### Violation of the FLSA

42. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

43. Plaintiffs and the collective group members are "employees" of Defendant as defined by the FLSA, 29 U.S.C. § 203(e)(1), and are not exempt from the FLSA's protections for any reason.

44. The FLSA requires employers to pay employees for all hours worked, including a "time-and-one-half" overtime premium for all hours worked over 40 in a workweek. *See* 29 U.S.C. §§ 206-207.

45. The FLSA does not specifically define what is meant by the term "work", *id.,* but the Department of Labor has promulgated regulations containing "Principles for Determination of Hours Worked" to inform this issue. *See* 29 C.F.R. §§ 785.11-785.13. These Principles plainly state that any work an employer "suffers or permits" to be performed at the job site (like Plaintiffs' meal break work) must be counted as hours worked when the employer "knows or has reason to believe" the work is being performed. *Id.*

46. During the relevant period, Defendant maintained a written policy that promised Plaintiffs and the collective group members one 30-minute unpaid meal break per shift. Having made this promise, Defendant was obligated to ensure either that Plaintiffs and the collective group members were completely relieved from all work-related duties during their unpaid meal break, or that Plaintiffs and the collective group members accurately tracked and recorded their shortened meal breaks and received wages calculated at the appropriate rate for each shortened break.

47. During the relevant period, Defendant did not require Plaintiffs and the collective group members to "clock out" before starting a meal break or "clock in" after their meal break was over. As a result, Defendant did not create accurate, contemporaneous records showing whether Plaintiffs and the collective group members received a full meal break, or experienced a shortened or interrupted meal break.

48. During the relevant period, Defendant did not ensure that Plaintiffs and the collective group members were completely relieved from all work-related duties during their unpaid meal break. Rather, Defendant regularly failed to provide sufficient staffing to free Plaintiffs and the collective group members from their work obligations during unpaid meal breaks. As a result, Defendant's managers routinely instructed Plaintiffs and the collective group

members not to leave their units during their meal breaks, to spend as little time as possible away from their units during their meal breaks, to take only a few minutes for lunch and to resume working promptly after their shortened meal break.

49. During the relevant period, Defendant has regularly suffered or permitted Plaintiffs and the collective group members to perform more than *de minimis* work during their 30-minute unpaid meal breaks.

50. Mr. Snyder claims that Defendant has suffered or permitted him to perform more than *de minimis* work during around 80% of his unpaid meal breaks. Mr. Snyder's meal breaks were typically interrupted or shortened by work responsibilities that included: admitting patients, taking vital signs, providing patient care, completing paperwork, responding to emergency situations, and interacting with other hospital employees.

51. Ms. Galt claims that Defendant has suffered or permitted her to perform more than *de minimis* work during about 95% of her unpaid meal breaks. Ms. Galt's meal breaks were typically interrupted or shortened by work responsibilities that included: admitting patients, providing patient care, monitoring patients, administering medicine, monitoring blood-work and test results, responding to emergency situations, and interacting with other hospital employees and visitors.

52. Ms. Murphy claims that Defendant has suffered or permitted her to perform more than *de minimis* work during about 90% of her unpaid meal breaks. Ms. Galt's meal breaks were typically interrupted or shortened by work responsibilities that included: admitting patients, providing patient care, monitoring patients, administering medicine, monitoring blood-work and test results, responding to emergency situations, and interacting with other hospital employees and visitors.

53. During the relevant period, Defendant knew that Plaintiffs and the collective group members regularly performed unpaid meal break work because: their managers assigned them work to do during meal breaks, they routinely performed meal break work in plain sight on Defendant's premises, their managers saw them performing work during meal breaks, their performance of meal break work was regularly captured by video cameras Defendant maintained throughout its facilities, Defendant provided insufficient staffing to free them from work obligations during meal breaks; and they spoke to their managers about issues relating to meal break work and pay.

54. Despite knowing that Plaintiffs and the collective group members were working during their unpaid meal breaks, Defendant did not take steps to accurately track their meal break work time, or pay all wages owed for this time.

55. During the relevant period, Plaintiffs and the collective group members have been harmed as a direct and proximate result of Defendant's unlawful conduct, because Defendant has regularly and consistently deprived Plaintiffs and the collective group members of overtime wages owed for meal break work they performed in workweeks of 40 hours or more.

56. For all the reasons stated above, Plaintiffs and the collective group members are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

WHEREFORE, Plaintiffs respectfully pray for the following relief:

    a. Appointing David J. Cohen as Class Counsel;

    b. Requiring Defendant to provide Class Counsel with a list of all names and current (or best known) addresses of all individuals whom Defendant, their subsidiaries, or affiliated companies employed in the state of Pennsylvania at any time during the relevant period;

    c.    Authorizing Class Counsel to issue a notice informing the Class members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

    d.    Finding that Defendant willfully violated the applicable provisions of the FLSA by failing to pay all required wages to Plaintiffs and the Class members;

    e.    Granting judgment in favor of Plaintiffs and the Class members, and against Defendant, their FLSA claim;

    f.    Awarding compensatory damages (not to include damages for pain and suffering or emotional distress) to Plaintiffs and the Class members in an amount to be determined;

    g.    Awarding pre-judgment interest and/or liquidated damages to Plaintiffs and the Class members;

    h.    Awarding Plaintiffs and the Class members a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

    i.    Granting an injunction requiring Defendant to desist from the wage and hour violations alleged in this Complaint; and

    j.    Awarding any further relief the Court deems just and equitable.

### COUNT II
### Violation of the Pennsylvania Minimum Wage Act

57. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

58. Defendant is a covered employer required to comply with the MWA's mandates.

59. Plaintiffs are seeking to recover "wages" as that term is defined by the MWA.

60. Plaintiffs and the Class members are employees entitled to the MWA's protections, and, during the relevant period, were not exempt from receiving wages payable under the MWA or its enabling Regulations for any reason.

61. The MWA and its enabling Regulations require employers to pay all wages owed for every hour worked and to pay overtime compensation at a rate "not less than one and one-half times an employee's regular rate" for all hours worked over 40 in a seven-day "workweek".

62. During the proposed Class period, the MWA provided that "any agreement between the employer and the worker" could not serve as a defense to civil actions brought to recover wages owed under the Act.

63. During the proposed Class period, Defendant violated the MWA wage payment requirement by knowingly suffering or permitting Plaintiffs and the Class members to work during their unpaid lunch breaks without accurately tracking this work or paying all wages owed for it.

64. During the proposed Class period, Defendant required Plaintiffs and the Class members to prioritize their work-related responsibilities over their entitlement to an uninterrupted lunch break.

65. During the proposed Class period, Defendant did not adequately inform Plaintiffs and the Class members about their entitlement to seek wages for interrupted meal breaks.

66. During the proposed Class period, Defendant's managers actively discouraged Plaintiffs and the Class members from requesting wages for all of their meal break work.

67. Defendant knew that Plaintiffs and the Class members were routinely experiencing missed or shortened lunch breaks because: their managers assigned them work to do during meal breaks, they routinely performed meal break work in plain sight on Defendant's premises, their managers saw them performing work during meal breaks, their performance of meal break work was regularly captured by video cameras Defendant maintained throughout its

facilities, Defendant provided insufficient staffing to free them from work obligations during meal breaks; and they spoke to their managers about issues relating to meal break work and pay.

68. Defendant's failure to pay Plaintiffs and the Class members all wages owed for their meal break work violated the MWA and caused them to suffer economic harm.

69. During the proposed Class period, there was no language in the MWA, no exception to the MWA or its enabling Regulations, or any applicable provision elsewhere in Pennsylvania law that permitted Defendant to avoid paying Plaintiffs and the Class members for their meal break work. As a result, Defendant had no good faith justification or defense for failing to pay Plaintiffs and the Class members the wages at issue here.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

    a. An Order certifying this claim to proceed as a class action;

    b. An Order designating David J. Cohen as Class Counsel;

    c. Judgment in favor of Plaintiffs and the Class members;

    d. An Order awarding Plaintiffs and the Class members all available compensatory damages, including, *inter alia*, all unpaid wages and prejudgment interest owed by Defendant under the MWA;

    e. An Order requiring Defendant to reimburse Plaintiffs and the Class members for their attorneys' fees and litigation costs;

    f. An injunction prohibiting Defendant from engaging in future violations of the MWA on this basis;

    g. An Order awarding Plaintiffs and the Class members any further relief the Court deems necessary, just, and proper; and

    h. An Order maintaining jurisdiction over this action after judgment or verdict to ensure Defendant's compliance with the foregoing.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury in the above-captioned matter.

                                  Respectfully submitted,

Dated: December 30, 2015         /s/ David J. Cohen
                                  David J. Cohen, Esq.
                                  604 Spruce Street
                                  Philadelphia, PA 19106
                                  (215) 873-4836
                                  dcohenlaw@comcast.net

                                  *Counsel for Plaintiffs and the Putative Collective / Class members*